STATE of Missouri, Plaintiff–Respondent,

v.

Calvin J. WILLIAMS, Defendant–Appellant.

No. 25919.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 25, 2005.

Motion for Rehearing or Transfer to
Supreme Court Denied March 18, 2005.

Application for Transfer Denied
April 26, 2005.

Craig Johnston, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Presiding Judge.

Calvin J. Williams (defendant) was convicted, following a jury trial, of forcible rape. § 566.030.1.[1] Defendant was charged as, found to be, and sentenced as a persistent offender. § 558.018.2. This court affirms.

Defendant does not challenge the sufficiency of the evidence by this appeal, but alleges trial court error regarding jury selection and the admission of evidence related to the taking and testing of a sample of defendant's blood. Facts recited, other than what is necessary to understand the nature of the charge against defendant, are limited to circumstances related to the issues presented on appeal. All evidence favorable to the state is accepted as true, including all favorable inferences drawn from the evidence. *State*

v. *Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). Evidence and inferences to the contrary are disregarded. *Id.*

On August 12, 2000, K.P. and her friend, Brian Reynolds, arrived at K.P.'s apartment at Madison Towers Apartments in Springfield, Missouri. K.P. was not working due to a disability. Defendant was present with some other people near the entrance to the apartment building, although he did not live at Madison Towers. K.P. and Reynolds asked if anyone wanted to join them to play cards, after which defendant accompanied K.P. and Reynolds to K.P.'s apartment. The three of them played cards and drank for two or three hours. Reynolds left the apartment. K.P. and defendant continued playing cards until he suddenly got up and grabbed her by the neck. He took her to the bedroom and raped her.

■ Point I is founded on the fact that defendant is African American and K.P. is Caucasian. Defendant asserts that the trial court erred in allowing the state to exercise a peremptory strike against Christine Blackwell, an African American member of the panel of prospective jurors. After the parties made their peremptory strikes, the following occurred.

MISS TOBIN [defense counsel]: Your Honor, I'd challenge [the state's] strike of No. 29, Christine Blackwell.

THE COURT: Okay. And the basis?

MISS TOBIN: Your Honor, I believe they struck her for her race.

MRS. PATTERSON [assistant prosecuting attorney]: Your Honor, that's a Batson[2] challenge. I think that I have to give the Court a race-neutral reason for my striking her—

THE COURT: All right—

<hr />

1. References to statutes are to RSMo Cum. Supp.1999.

2. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

MRS. PATTERSON: And the reason is that she told us that her brother had been prosecuted by our office for arson. That it was recent. That she did not feel that he was treated fairly by the police or by the Prosecutor's office. I think that is reason for me not to want her to sit on this jury.

THE COURT: Was her brother even convicted?

MRS. PATTERSON: I didn't ask.

THE COURT: I thought that my notes said that.

MRS. PATTERSON: It must be how she referred to it. I know I didn't ask specifically, but she just must have said that he was convicted of arson.

THE COURT: Well, of course, the record would speak for sure to that but—

MRS. PATTERSON: From my point of view, it was the fact that she answered to my question about the police and to the prosecution that she did not believe she [sic] was treated fairly.

MISS TOBIN: And I don't believe that was her testimony at all. She indicated that she had concerns about his treatment, but she indicated that she had no problem being fair and impartial in this case.

MRS. PATTERSON: Her answers to the ultimate questions are why I did not ask the Court to strike her for cause. Actually, the way it went was that I said: Was he treated fairly? She responded: I had concerns about that. Then, I asked: Was he treated fairly by the prosecution? She responded: I had concerns about that.

So, I didn't ask the Court to strike her for cause, but I've given ample reason for using a peremptory.

The trial court denied defendant's challenge to the state's peremptory strike of Ms. Blackwell stating, "The Batson challenge is denied on the basis that the State explained that there were other reasons for cause. I mean, other reasons to strike, while not stricken for cause, there were other valid reasons."

The procedure to be followed by trial courts in Missouri in addressing Batson challenges was enunciated in *State v. Deck*, 994 S.W.2d 527 (Mo. banc), *cert. denied*, 528 U.S. 1009, 120 S.Ct. 508, 145 L.Ed.2d 393 (1999).

In *Batson*, the United States Supreme Court prohibited the use of peremptory strikes to exclude potential jurors based on race, *Batson*, 476 U.S. at 97, 106 S.Ct. 1712, 90 L.Ed.2d 69 [(1986)],....

Missouri has adopted a three-step process for making a successful *Batson* challenge. *State v. Parker*, 836 S.W.2d 930, 939 (Mo.banc 1992). First, the defendant must object to the state's peremptory strike and identify the protected class to which the prospective juror belongs. *Id.* The state is then required to provide a reasonably specific and clear, race and/or gender-neutral explanation for the strike. *Id.* If the state provides such an explanation, the burden then shifts to the defendant to show that the state's explanation was pretextual and that the strike was actually motivated by the prospective juror's race or gender. *Id.*

In evaluating the prosecutor's explanation, the chief consideration is whether the explanation is plausible in light of the totality of the facts and circumstances surrounding the case. *Id.* While the presence of similarly-situated white or male jurors is probative of pretext, it is not dispositive. *Id.* This Court will reverse the trial court's decision on a *Batson* challenge only upon a showing of clear error. *Id.*

*Id.* at 536–37.

The events during voir dire that produced the Batson challenge arose when the

state inquired whether the members of the panel had personally been, or had a friend or family member who had been, the victim of a crime, accused of a crime, or convicted of a crime. A number of panel members responded, including Ms. Blackwell. She stated her brother had been convicted of arson. She stated this had occurred "locally." She was asked how long ago it had happened. She answered, "July." The following colloquy then occurred between the assistant prosecuting attorney and the panel member.

MRS. PATTERSON: And did you know enough to have an opinion if the police treated him fairly?

VENIREPERSON BLACKWELL: I have an opinion about that.

MRS. PATTERSON: Okay. And so if we have police officers that testify here today, do you think you might hold the way your brother was treated somewhat against them?

VENIREPERSON BLACKWELL No, I could be fair.

MRS. PATTERSON: Okay. Was it SPD or Greene County?

VENIREPERSON BLACKWELL: Greene County.

MRS. PATTERSON: Okay. And did—Greene County did not investigate this case, and I'll just let you know that.

. . .

Ms. Blackwell, did you follow the case such that you watched any part of the prosecution?

VENIREPERSON BLACKWELL: No.

MRS. PATTERSON: Do you have an opinion about how he was treated?

VENIREPERSON BLACKWELL: Fairly.

MRS. PATTERSON: Okay. And so do you think that would certainly have been someone from my office?

Do you think that that would be a problem in terms of your ability to be fair in this case?

VENIREPERSON BLACKWELL: I don't believe so.

MRS. PATTERSON: Okay. And anything else about that situation?

VENIREPERSON BLACKWELL: No.

■ Contrary to the statements by the attorneys for both the state and defendant, Ms. Blackwell did not say she had "concerns" about her brother's treatment in the arson case. However, the fact that the state's race-neutral explanation of why it exercised its peremptory challenge to remove Ms. Blackwell was based on incorrect information does not, standing alone, require a finding that the strike violates the mandates of *Batson*. *See State v. Koenig*, 115 S.W.3d 408 (Mo.App.2003); *State v. Bass*, 81 S.W.3d 595 (Mo.App.2002). "The issue in a Batson challenge . . . is not whether the reason given for a strike is true in fact, but whether the striking party believes it to be true; even if only a hunch, and the strike is not inherently racial on its face." *Bass, supra*, at 611. A prosecutor may base a peremptory strike on past experience, "hunches," or "horse sense," without violating *Batson* so long as the basis for the strike is racially-neutral. *State v. Smith*, 944 S.W.2d 901, 912 (Mo. banc), *cert. denied*, 522 U.S. 954, 118 S.Ct. 377, 139 L.Ed.2d 294 (1997).

Ms. Blackwell stated that her brother had been recently convicted of arson. The arrest, prosecution, or incarceration of a venireperson's relative is a race-neutral reason for exercising a peremptory challenge. *State v. Deck*, 994 S.W.2d at 537; *State v. Johnson*, 930 S.W.2d 456, 461–62 (Mo.App.1996). Although Ms. Blackwell

did not state she had concerns about how her brother had been treated, she did state she had an "opinion" about how he was treated by police. The assistant prosecuting attorney and the defense attorney expressed beliefs that Ms. Blackwell stated such an opinion.

■ A prospective juror's general demeanor such as inattentiveness, hesitation, or nonverbal communication, is a race-neutral explanation for the exercise of a peremptory strike. *State v. Taylor,* 18 S.W.3d 366, 372 (Mo. banc), *cert. denied,* 531 U.S. 901, 121 S.Ct. 238, 148 L.Ed.2d 170 (2000); *State v. Deck, supra; State v. Miller,* No. 83858, 162 S.W.3d 7, 2005 WL 43058 (Mo.App.E.D. filed Jan. 11, 2005). The assistant prosecuting attorney and defendant's attorney apparently formulated their beliefs based on their observations of Ms. Blackwell and concluded that she had concerns about the treatment her brother received.

Defendant further argues that the state's peremptory strike of Ms. Blackwell was pretextual because a similarly situated white panel member, Connie Bisby, was not stricken by the state and served as a juror at trial. Ms. Bisby requested to speak privately regarding voir dire inquiries. She explained that she and her husband had been arrested six years earlier; that he was convicted of a drug offense. She told the trial court and the attorneys that she "was more or less let go." The events she described occurred in Greene County. Springfield city police were involved in the case. She was asked how she felt about how the police treated her. She answered, "The initial part of it, badly, but then—fairly." The initial part of the events about which she complained involved execution of a search warrant. Ms. Bisby stated, in response to questioning by the assistant prosecuting attorney, that she and her husband had been treated fairly by the prosecution. She stated that there was nothing about the experience that left her feeling like she could not be fair to both sides in this case.

■ Action taken by the state with respect to a juror with similar circumstances to one struck is relevant in assessing whether a strike was racially motivated. *State v. Davis,* 894 S.W.2d 703, 710–11 (Mo.App.1995). However, determination of the question requires consideration of the totality of the circumstances, or as stated in *Davis,* "the entire 'milieu' of voir dire in examining the peremptory strikes of the State as part of a *Batson* challenge." *Id.* at 711.

■ This court first notes that no issue was presented to the trial court regarding the claim that failure to strike Ms. Bisby demonstrated that the reasons given in striking Ms. Blackwell were pretextual. Arguably, the issue is not preserved for review by this court. As *State v. Bass, supra,* explains, quoting from *State v. Pride,* 889 S.W.2d 163, 165 (Mo.App.1994), " 'Where a defendant fails to lay a foundation for findings of pretext on the state's explanations in the trial court, the defendant may not challenge the state's explanations on appeal.' " 81 S.W.3d at 611. Regardless, the events involving Ms. Blackwell's brother occurred a few months prior to the trial of this case. Ms. Bisby's experience occurred six years before this trial.

A finding that a peremptory strike was properly used will not be overturned absent clear error. *State v. Gray,* 887 S.W.2d 369, 384 (Mo.banc 1994). A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*State v. Antwine,* 743 S.W.2d 51, 66 (Mo.banc 1987).

*State v. Smith, supra.*

A review of the entire record on voir dire directed to the issues raised before the trial court and addressed on appeal does not leave this court with the definite and firm conviction that the trial court committed a mistake in denying defendant's challenge to the peremptory strike the state used to remove Ms. Blackwell. The trial court concluded that defendant did not rebut the state's assertion that the challenge to Ms. Blackwell was not racially motivated. This court finds no abuse of discretion in that determination. Point I is denied.

Point II of defendant's appeal argues that the trial court erred in denying defendant's motion to suppress evidence and objections at trial to evidence regarding the taking and testing of a blood sample taken from defendant. Defendant argues the taking of the blood sample violated "his rights to be free from self-incrimination, counsel, and to be free from an unreasonable search and seizure."

 The events to which Point II are directed occurred following defendant's arrest. Defendant was informed of his Miranda rights.[3] He invoked those rights, telling the arresting officer he did not wish to speak to him without a public defender. Interrogation ceased and defendant was incarcerated.

Sergeant Robert Pitts contacted defendant the next day. Defendant was taken to an interview room. He was again read his Miranda rights. Sergeant Pitts was not aware that defendant had previously "invoked his rights" and had declined to speak to law enforcement personnel. Sergeant Pitts asked defendant for a blood sample. Defendant signed a form consent-ing to giving a blood sample. A blood sample was drawn and sent to the Missouri Highway Patrol laboratory. Analysis of the blood sample revealed defendant's DNA was consistent with DNA present on the victim's vaginal swab.

Defendant filed a motion to suppress evidence directed to the evidence obtained as a result of the taking of the blood sample. He also objected at trial to admission of testimony and other evidence related to the blood sample. The motion to suppress evidence was denied and the objections at trial overruled.

 Under *Miranda,* once an individual requests to speak to an attorney, all interrogation must cease until an attorney has been provided. *State v. White,* 770 S.W.2d 357, 359 (Mo.App.1989). A violation of *Miranda* does not, however, vitiate consent to search if the consent was otherwise voluntarily given. *Id.* at 360. A request for consent to search is not an interrogation for purposes of *Miranda* because consent is not an incriminating statement. *Id.* at 359. A *Miranda* violation, however, is a factor to be considered in determining whether the consent was voluntary. *Id.* at 360.

 Factors to consider, in addition to the *Miranda* violation, include the number of officers present when consent was given, the degree to which the officers emphasized their authority, whether any weapons were displayed, whether the person was in custody, whether any fraud was committed by officers, and the acts and statements of the person who consented to the search. *Id.* at 360.

Defendant was in custody at the time he signed the consent to give a blood sample. He was questioned by one officer, Sergeant Pitts. Defendant was not handcuffed. There is no evidence that Sergeant Pitts displayed a weapon or used

3. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

coercion to procure defendant's consent. The questioning, including the request for consent and defendant signing the consent form, was videotaped. The form defendant signed informed him he had a constitutional right not to be searched without a search warrant and the right to refuse to consent to a search.

After reviewing the videotape, the trial court denied defendant's motion to suppress evidence. The trial court found defendant freely and voluntarily consented to submit to the blood draw based on the totality of the circumstances revealed at the evidentiary hearing.

The scope of review in considering a trial court's ruling on a motion to suppress evidence is whether that ruling is supported by substantial evidence. *State v. Granado*, 148 S.W.3d 309, 311 (Mo. banc 2004). A trial court's ruling will be reversed only if it is clearly erroneous. *Id.* This court concludes the trial court's ruling was not clearly erroneous. Point II is denied. The judgment is affirmed.

BATES, C.J., and SHRUM, J., concur.