**STATE of Missouri, Respondent,**

v.

**Roland TYLER, Appellant.**

**No. WD 64650.**

Missouri Court of Appeals,
Western District.

June 13, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 2006.

Shaun J. Mackelprang, Jefferson City, MO, for Respondent.

Roland Tyler, Jefferson City, pro se.

Before EDWIN H. SMITH, P.J., UIRICH and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

A jury convicted Ronald Tyler on two counts of first-degree domestic assault, three counts of second-degree domestic assault, one count of kidnapping, and two counts of armed criminal action. On appeal, Tyler raises two points. First, he contends the convictions on multiple counts violated his constitutional right against double jeopardy. Second, he contends the circuit court lost jurisdiction to proceed to trial after the State filed an "Amended Information" in an improper attempt to supercede the original indictment. For reasons explained herein, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

On April 15, 2002, Tyler went to the airport to pick-up his girlfriend, Brandi Mendoza, who was returning to Kansas City from a business trip to New York. When Mendoza arrived, she noticed that Tyler was sweaty and his eyes were "buggy." Tyler became verbally abusive, accusing Mendoza of cheating on him and insisting that she quit her job. When Mendoza refused to quit her job, Tyler told her she could leave or go home with him and "get [her] ass kicked."

During the drive home, Tyler became physically abusive and continued his verbal assaults. Mendoza began to cry when Tyler threatened to push her out of the car. He "karate chopped" her in the throat and took her telephone away while she was making a call. Tyler stopped the vehicle three times as he continued his rambling accusations that Mendoza was a liar and a cheat.

Tyler and Mendoza lived in the basement apartment of his mother's home in Kansas City. When they got to the apartment, Tyler used two belts to tie Mendoza's wrists to the ceiling rafters. He stuffed a sock into Mendoza's mouth and secured it with a bandana around her head. Tyler then punched Mendoza twice in the left side of her face, breaking her jaw.

Tyler left the room for a few moments, but returned with scissors that he used to cut off Mendoza's clothing. He scraped her skin with the scissor blade and then

punched her in the chest. Tyler grabbed the cord off the nearby electric blanket, stripped it in half, and used it to secure one of Mendoza's ankles to a support beam and the other ankle to a water heater pipe, so that she was spread-eagle off the floor. He then repeatedly kicked her in the vagina with the top of his foot.

Tyler's nephew opened the stairway door and called down for Tyler to get something for him. On his way up the stairs, Tyler again kicked Mendoza in the crotch, this time with such force that one of the belts snapped, leaving her left hand free. When Tyler returned, he found Mendoza trying to free herself, so he punched her in the chin. He took the gag out of her mouth long enough for her to spit out the blood, then re-secured the gag and told Mendoza they were going to play the "truth game." He said he would stab her every time she told a lie. Tyler then knocked her unconscious with a head butt.

When Mendoza awoke, Tyler was pouring Gatorade on her face. He poked cuts under her left breast with a knife and then sliced her left temple. Tyler eventually began the "truth game" by asking her if she had cheated on him. Although Mendoza hadn't cheated, she told him she had, hoping he would not hurt her further. Tyler stabbed Mendoza in her left thigh. Mendoza jostled the gag out of her mouth and screamed. Tyler dropped the knife and ran upstairs. Mendoza was able to reach the knife and free herself. She ran outside the basement door where she saw Tyler's mother getting into a car. Mendoza jumped into the passenger seat and begged Tyler's mother to help her get away.

Tyler's mother took Mendoza to the home of her other daughter in Overland Park. Mendoza showered and took some pain medication so she could sleep. The next morning she went to the hospital for treatment and then filed a police report.

As a result of the assaults by Tyler, Mendoza suffered severe bruising of her chest and vaginal areas, a stab wound to her leg, and cuts on her chest and head. She had surgery to repair her broken jaw. She spent two to three weeks at a women's shelter and underwent psychological counseling and therapy.

Tyler was charged by indictment with kidnapping, Section 565.110;[1] two counts of first-degree domestic assault, Section 565.072; three counts of second-degree domestic assault, Section 565.073; and two counts of armed criminal action, Section 571.015. The State later filed an Amended Information charging Tyler as a prior and persistent offender. The Amended Information also included a statutory element of the kidnapping charge that was not included in the original indictment.[2] Following a jury trial, Tyler was convicted on all counts and sentenced to a total of thirty years' imprisonment. He appeals.

## DOUBLE JEOPARDY

Tyler first contends the trial court violated his constitutional right against double jeopardy by entering judgment on multiple charges of assault for a continuous course of conduct involving one victim. Tyler essentially argues that the entire incident constituted a single assault for which he should not be subject to multiple punishments.

---

**1.** All statutory citations are to Revised Statutes of Missouri (2000), unless otherwise noted.

**2.** Consistent with Section 565.110.1(5), the Amended Information corrected an inadvertent omission in the original indictment by alleging that Tyler kidnapped Mendoza "for the purpose of inflicting injury."

■ This double jeopardy claim was not properly preserved for appeal, as Tyler failed to raise it in his motion for new trial. *State v. Childs,* 684 S.W.2d 508, 509 (Mo. App.1984). We, therefore, review only for plain error. Under Rule 30.20,[3] we have discretion to consider plain errors that affect substantial rights and will result in manifest injustice if not corrected.

■ Protections against double jeopardy arise from the Fifth Amendment to the United States Constitution, which provides: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." This provision, pursuant to the Fourteenth Amendment, prohibits states from imposing multiple punishments for the same offense. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Although it generally does not allow the splitting of a single crime into separate parts for piecemeal prosecution, the double jeopardy clause is not violated when a defendant is punished for more than one offense arising from the same set of facts. *State v. Murphy,* 989 S.W.2d 637, 639 (Mo.App.1999).

■ In the context of an assault case, separate offenses can arise from a single set of facts each time the defendant forms an intent to attack the victim. *Childs,* 684 S.W.2d at 511. If the defendant has an opportunity to reconsider his actions, each assault separated by time is considered a separate offense. *Id.* Similarly, when the charges are based on different acts or a separate *mens rea* is newly formed, the conduct gives rise to an additional crime. *Schofield v. State,* 750 S.W.2d 463, 466 (Mo.App.1988).

Tyler was convicted on two counts of first-degree domestic assault[4] for two separate injuries he inflicted upon Mendoza: (1) breaking her jaw by punching her twice in the face, and (2) stabbing her in the leg during the "truth game." His three convictions for second-degree domestic assault[5] were for additional acts that caused injury to Mendoza: (1) kicking her in the vagina, (2) head butting, and (3) cutting her chest. Each of these five acts involved a different method of assault, and each was separated in time intervals sufficient to allow Tyler to reflect upon his conduct and re-establish his intent to continue the assaults through several distinct phases.

The initial phase of the charged conduct began in the basement apartment, when Tyler tied Mendoza's hands to the rafters, stuffed a sock in her mouth, and then punched her twice in the face as she hung defenseless. The second phase occurred when he left the room and returned with a pair of scissors that he used to cut off Mendoza's clothes. As he scraped her skin with the blade of the scissors and punched her in the chest, Tyler vowed to do even greater injury to her with a knife. A third phase of the attack occurred when Tyler spread Mendoza's legs and secured her ankles separately to a water heater and a support beam, such that her legs were not touching the ground. He then repeatedly kicked her in the vagina and punched her in the stomach.

---

3. All rule citations are to Mo.R.Crim.Pro. (2006) unless otherwise noted.

4. First-degree domestic assault occurs when a person "attempts to kill or knowingly causes or attempts to cause serious physical injury to a family or household member or an adult who is or has been in a continuing social relationship of a romantic or intimate nature with the actor." Section 565.072.1.

5. Second-degree assault occurs when a person "[a]ttempts to cause or knowingly causes physical injury to such family or household member by any means, including but not limited to, by use of a deadly weapon or dangerous instrument." Section 565.073.1(1).

The assault stopped briefly when Tyler's nephew asked Tyler to come upstairs. When Tyler returned, he began a fourth phase by announcing the rules of his "truth game," whereby he would stab Mendoza each time she told him a lie. He then headbutted Mendoza, leaving her unconscious. She awoke to find him poking her chest and making small cuts in her temple with a knife. Tyler began the final phase of his attack by asking Mendoza whether she had ever cheated on him. When Mendoza responded that she had cheated, Tyler stabbed her in the thigh.

■ The evidence was sufficient to show that Tyler used at least five different methods (punching, kicking, headbutting, stabbing, and cutting/scraping) to assault Mendoza over an extended period of time. He either left the room or was interrupted at times, but then returned to continue on his violent course. At other times, he stopped the attacks long enough to explain what else he planned to do to Mendoza or to explain the rules of his "truth game." In so doing, he clearly demonstrated renewed intent to inflict injury by committing sequential acts of first-degree and second-degree domestic assault.

The trial court properly entered judgment on the five assault charges because each of Tyler's violent acts constituted a separate offense. Tyler was not subjected to multiple punishments for a single offense, and, thus, no double jeopardy violation or manifest injustice occurred. Point I is denied.

## JURISDICTION

■ In Point II, Tyler contends the trial court was "divested of jurisdiction" when the State abandoned the original indictment by improperly filing an Amended Information. The Amended Information sought to cure defects in the indictment by adding a requisite element for the kidnapping charge and by charging Tyler as a prior and persistent offender. However, Tyler argues the only proper procedure to correct an indictment is by the filing of an "Information in Lieu of Indictment" or "Substitution of Indictment." Based on the impropriety of the Amended Information, Tyler asserts the court had no authority to proceed to trial on the charges therein.

We find no merit to Tyler's claim that this situation gives rise to a jurisdictional issue. If the Amended Information was improper and of no effect, as he contends, then the original indictment would not have been superseded. We would be left, then, not with a jurisdictional defect, but only a question of whether the indictment was sufficient to support the kidnapping conviction and the sentencing based on Tyler's status as a prior and persistent offender. Similarly, if, as we believe, the Amended Information was in effect a request to substitute the indictment, any defect in the indictment was cured, and there is still no jurisdictional issue.

Tyler is technically correct that an indictment, unlike an information, cannot be amended. A defective indictment can, however, be substituted by an information before trial that charges the same offenses. Section 545.300.[6] The "Amended Information" charging Tyler as a prior and persistent offender was timely filed at least one week before trial. The amendment mimicked all of the original charges

---

6. Section 545.300. Informations-amendment-substitution for defective indictment ... If an indictment be held to be insufficient either as to form or substance, an information charging the same offense charged or attempted to be charged in such indictment may be substituted therefor at any time before the jury is sworn.

and merely added an allegation that Tyler kidnapped Mendoza for the purpose of "inflicting personal injury" in order to clarify which subsection of the kidnapping statute (Section 565.110.1(5)) was at issue. The Amended Information also properly included a listing of Tyler's two prior felony convictions. An amendment to invoke the prior and persistent offender statute, for purposes of enhancing a sentence, is not a charge of a different offense. *State v. Larner*, 844 S.W.2d 490, 492 (Mo.App. 1992).

It is of no consequence that the pleading was incorrectly titled "Amended Information" instead of "Information in Lieu of Indictment" or "Substitution for Indictment." To hold otherwise would exalt form over substance. *Beckmann v. Miceli Homes, Inc.*, 45 S.W.3d 533, 539 (Mo.App. 2001). The State had authority under Section 545.300 to substitute an information for the original indictment, which is exactly what occurred in this case. Moreover, even if there had been a procedural defect in the Amended Information, Tyler's claim would fail for lack of any showing of prejudice as required by Rule 23.11.[7] In particular, Tyler has failed to even allege that the mislabeling of the information or the clarification of the kidnapping charge adversely affected his ability to defend against the charges at trial. Accordingly, Point II is denied.

### CONCLUSION

The judgment of convictions is affirmed.

All concur.

---

**7.** Rule 23.11 provides:

An indictment or information shall not be invalid, nor shall the trial, judgment, or other proceedings on the indictment or information be stayed, because of any defect that does not prejudice the substantial rights of the defendant.