**STATE of Missouri, Respondent.**

v.

**Aaron B. HARRIS, Appellant.**

No. WD 67312.

Missouri Court of Appeals, Western District.

Jan. 22, 2008.

Frederick Joseph Ernst, Kansas City, MO, for appellant.

Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, MO, for respondent.

Before HAROLD L. LOWENSTEIN, Presiding Judge, JOSEPH M. ELLIS, Judge, and THOMAS H. NEWTON, Judge.

JOSEPH M. ELLIS, Judge.

Aaron Harris challenges two of his three convictions for first-degree assault, § 565.050.[1] For the following reasons, we reverse Appellant's convictions and sentences on those two counts.

In 2005, Daniel Bailey was living with his mother and grandmother at 505 Magnolia Street in Lee's Summit, Missouri. Bailey had been dating M.M. since November 2004, and both had previously been threatened and attacked by Steve Harris, who was M.M.'s ex-boyfriend and Appellant's cousin.

On April 7, 2005, M.M. filed an *ex parte* order of protection against Steve Harris. When she got home at 8:00 p.m. that evening, M.M. discovered that her house had

---

1. All statutory references are to RSMo 2000 unless otherwise noted.

been broken into and called the police. Later that evening, at 11:14 p.m., she received a death threat from a man disguising his voice.

At approximately 11:30 p.m., Bailey was awakened by Appellant ringing the doorbell at his house. Bailey did not recognize Appellant, but he opened the door quickly to avoid waking up his mother and grandmother. Appellant was standing with his hand behind his back, weaving back and forth as if he were intoxicated. When Bailey asked how he could help Appellant, Appellant stated that he was looking for Jessica. Bailey informed him that no one named Jessica lived there and started to close the door. Appellant then quickly forced open the door and struck Bailey in the face with his fist and a knife, cutting Bailey's face. During the course of the ensuing fight, Appellant repeatedly punched Bailey, slashed his arm with the knife, and stabbed him in the back. As Bailey lay on the floor in the hallway, Appellant kicked him and told him "not to f* * * with Steve." Appellant then left. Appellant's attack on Bailey lasted about one minute. Bailey had to be hospitalized as a result of his injuries and sustained permanent scarring from each of the knife wounds.

Appellant was subsequently arrested and charged by indictment in the Circuit Court of Jackson County with three counts of first-degree assault and one count of armed criminal action. The first assault count alleged that Appellant "knowingly caused serious physical injury to Daniel Bailey by stabbing him in the face." The second count alleged that he "knowingly caused serious physical injury to Daniel Bailey by stabbing him in the arm." The final assault count alleged that Appellant "knowingly caused serious physical injury to Daniel Bailey by stabbing him in the back."

Appellant was tried by a jury on April 10 and 11, 2006, and was found guilty as charged. He was subsequently sentenced to concurrent terms of twelve years in the Missouri Department of Corrections on all of the four counts.

In his sole point on appeal, Appellant contends that the trial court erred in entering convictions and sentences against him on three counts of first-degree assault rather than just one. He claims that these convictions and sentences punished him multiple times for the same offense, thereby improperly exposing him to double jeopardy.

Because this issue was not preserved for appellate review, Appellant asks this Court to review for plain error. "Rule 30.20 provides, in pertinent part, that '[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or [a] miscarriage of justice has resulted therefrom.'" *State v. Beggs,* 186 S.W.3d 306, 311 (Mo. App. W.D.2005). "In determining whether to exercise its discretion under plain error review, the appellate court looks to determine whether on the face of the appellant's claim substantial grounds exist for believing that the trial court committed a 'plain' error, which resulted in manifest injustice or a miscarriage of justice." *Id.* (internal quotation omitted). "Plain errors are evident, obvious, and clear, and we determine such errors exist based on the facts and circumstances of each case." *State v. Fewell,* 198 S.W.3d 691, 693 (Mo.App. S.D. 2006) (internal quotation omitted).

"The constitutional protection to be free from double jeopardy is a personal right or privilege which is waived if not timely and properly asserted at trial." *State v. Dennis,* 153 S.W.3d 910, 918 (Mo. App. W.D.2005) (internal quotation and

brackets omitted). "Nevertheless, the right to be free from double jeopardy is a constitutional right that goes to the very power of the State to bring the defendant in the court to answer the charge brought against him." *Id.* (internal quotation omitted). "Thus, there is an exception to the general rule that the claim is waived when the court can determine from the face of the record that the court had no power to enter the conviction." *Id.* (internal quotation omitted). Accordingly, we review Appellant's claim for plain error.

■ The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states by the Fourteenth Amendment, "prevents a criminal defendant from being subjected to multiple punishments for the same offense." *State v. Dravenstott,* 138 S.W.3d 186, 190 (Mo.App. W.D.2004). In this regard, "the interest to be protected is limited to ensuring that the total punishment does not exceed that authorized by the legislature." *Id.* (internal quotations and brackets omitted). "Double jeopardy analysis regarding multiple punishments is, therefore, limited to determining whether cumulative punishments were intended by the legislature." *Dennis,* 153 S.W.3d at 918 (internal quotation omitted).

"A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." *§ 565.050.1.* The State contends that each blow landed by the Appellant with the knife was a separate, voluntary act for which Appellant formed a separate intent to physically harm the victim. The State argues that "Appellant had the brief moment it took him to raise the sharp object before striking [Bailey] a second and third time with it to form the intent to cause serious physical injury anew." This argument has no merit.

■ "In the context of an assault case, separate offenses can arise from a single set of facts each time the defendant forms an intent to attack the victim." *State v. Tyler,* 196 S.W.3d 638, 641 (Mo. App. W.D.2006). "If the defendant has an opportunity to reconsider his actions, each assault separated by time is considered a separate offense." *Id.; see also State v. Barber,* 37 S.W.3d 400, 404 (Mo.App. E.D. 2001) ("Where the defendant has the opportunity to reconsider his actions, a crime is separate in time."). "Similarly, when the charges are based on different acts or a separate *mens rea* is newly formed, the conduct gives rise to an additional crime." *Tyler,* 196 S.W.3d at 641. Factors to consider in determining whether multiple instances of offensive physical contact constitute multiple crimes include "time, place of commission, and, preeminently, the defendant's intent, as evidenced by his conduct and utterances." *State v. Childs,* 684 S.W.2d 508, 511 (Mo.App. E.D.1984) (internal quotation omitted).

■ The evidence submitted by the State clearly reflects that the entire altercation in this case lasted little more than one minute and that Bailey and Appellant were locked in a single, continuous battle the entire time. The record does not contain any evidence that would support an inference that Bailey and Appellant stopped struggling for any period of time that would have afforded Appellant an opportunity to reconsider his actions. Absent evidence of separation in time sufficient to provide Appellant an opportunity to reconsider his actions, Appellant's attack on Bailey must be considered one assault and not three as charged by the State. *Tyler,* 196 S.W.3d at 641; *Barber,* 37 S.W.3d at 404.

In making its argument, the State relies on *State v. Collins,* 154 S.W.3d 486 (Mo. App. W.D.2005), which is readily distin-

guishable from the case at bar. In *Collins*, the defendant and his father went to the victim's house following a dispute between the victim and the defendant's mother. *Id.* at 489–90. When the victim refused to apologize to the defendant's mother, the defendant poked him in the chest and said, "If you ever set foot off this place, I'll get you." *Id.* at 490. The victim then walked across his porch, onto his lawn, and attempted to leave. *Id.* At that point, the defendant's father caught up to him, grabbed him, and threw him to the ground. *Id.* The victim was then hit or kicked two or three times but did not know who struck him. *Id.* The defendant was acquitted of assault in the first and second degree but was found guilty of assault in the third degree for poking the victim in the chest with his finger. *Id.*

On appeal, the defendant claimed that poking the victim with his finger was a separate offense from striking the victim on the ground. *Id.* at 493–94. He argued that, since he was only charged in the indictment with striking the victim on the ground, his conviction could not stand. *Id.* at 494. This Court agreed with the defendant that poking the victim in the chest was a separate act of offensive contact from beating the victim on the ground and was, therefore, a separate crime. *Id.* at 497. We reversed the defendant's conviction for third degree assault because he had only been charged with attacking the victim on the ground. *Id.*

Unlike the case at bar, *Collins* clearly involved some degree of separation in time and place as well as different forms of offensive contact. Poking the victim in the chest differed significantly from viciously hitting or kicking the victim in the face after he was thrown to the ground a short time later. Notably absent from *Collins* is any indication that the two or three different blows sustained by the victim on the ground could have been considered separate offenses.

In the case *sub judice*, the record contains no evidence of separation in time sufficient to provide Appellant an opportunity to reconsider his actions. Accordingly, his attack on Bailey must be considered one assault and not three as charged by the State. By convicting and sentencing Appellant in three separate counts for the same offense, the trial court clearly violated his right to be free from multiple punishments for the same offense. The prejudice sustained by Appellant is readily apparent, and a manifest injustice will result if the two extra convictions and sentences are allowed to stand.

Having found plain error, we reverse Appellant's convictions for first-degree assault on Counts II and III and vacate the sentences imposed related to those counts. In all other respects, the trial court's judgments and sentences are affirmed.

All concur.