**STATE of Missouri, Respondent,**

**v.**

**James D. BALDWIN, Appellant.**

**No. WD 69250.**

Missouri Court of Appeals, Western District.

July 21, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 22, 2009.

Laura G. Martin, Esq., Kansas City, MO, for appellant.

Shaun J. Mackelprang, Esq., and Richard A. Starnes, Esq., Jefferson City, MO, for respondent.

Before Division Three: HAROLD L. LOWENSTEIN, Presiding Judge, JOSEPH M. ELLIS and LISA WHITE HARDWICK, Judges.

LISA WHITE HARDWICK, Judge.

James Baldwin was convicted by jury of forcible rape, forcible sodomy, and two counts of second-degree assault. Baldwin contends the circuit court erred in: (1) convicting him of two separate counts of second-degree assault in violation of his constitutional right against double jeopardy; (2) overruling his motion for judgment of acquittal because the State adduced insufficient evidence to prove he was guilty of second-degree assault; (3) overruling his motion to suppress DNA evidence because the request for consent to search occurred after Baldwin requested an attorney. For reasons explained herein, we affirm in part and reverse in part.

FACTUAL AND PROCEDURAL BACKGROUND

Viewed in a light most favorable to the verdict, the evidence adduced at trial established the following facts. In November 2004, J.C., a prostitute, was soliciting customers when Baldwin drove up in a utility van and gestured for J.C. to get in the vehicle. After entering the vehicle, Baldwin requested a "half and half," which meant half oral sex and half vaginal intercourse. J.C. agreed to perform the sexual acts for $30.00.

Baldwin parked in an alleyway. He lowered his pants to his ankles and told J.C. to undress. J.C. said she would not do anything without seeing the money first. Baldwin told J.C. she would have to undress in order to see the money, but J.C. refused.

Baldwin pulled out a box cutter and jumped on top of J.C. He began cutting off her shirt and, in the process, cut J.C.'s breast and abdomen. Baldwin also bit J.C.'s breast during the struggle. Following the attack, he told J.C., "I just want to show you how serious I am" and "Next I'll slice your throat."

Baldwin then moved the van and parked underneath a bridge, which prevented J.C. from opening the passenger door. There, he forced J.C. to perform oral sex and engage in vaginal intercourse. When Baldwin began to drive away, J.C. got out of the vehicle and took note of the van's license plate number. She asked a couple, who lived in a car underneath the bridge, to write down the number.

Several days later, J.C. informed a police officer patrolling the area of the incident. She led him to the spot underneath the bridge, where they found J.C.'s tattered shirt from the attack. J.C. also gave the officer the jeans she wore during the incident, which she had not worn since the attack.

After finding the homeless couple to retrieve the van's license plate number, the police issued a "pick-up" order for the van and Baldwin, who was listed as the owner of the van. Upon searching the van, police found a utility knife and refill blades.

Baldwin was brought in for questioning and read his *Miranda* rights. He signed a waiver indicating he understood his rights. Baldwin then agreed to speak with police and told them he did not have sex with prostitutes. He also signed a consent form to give a DNA sample.

After being informed that his van was identified as a rape suspect's vehicle, Baldwin said, "That format sounds like it," and he asked to speak with an attorney. Detectives told Baldwin that a crime scene technician was on the way. Baldwin indicated he would still give the DNA sample.

Testing of the sample later revealed that Baldwin's DNA matched the DNA removed from J.C.'s jeans. A laboratory analyst calculated the probability of the DNA matching anyone other than Baldwin at one in 460 quadrillion.

Baldwin was charged with two counts of second-degree assault, one count of forcible sodomy, and one count of forcible rape. The first assault count alleged that Baldwin knowingly caused physical injury to J.C. by cutting her abdomen. The second assault count alleged that Baldwin knowingly caused physical injury to J.C. by cutting her breast. At trial, a jury found Baldwin guilty on all four counts. The court sentenced him to concurrent five-year terms for the assault convictions, to run consecutively to concurrent twenty-five-year terms for the forcible rape and sodomy convictions. Baldwin appeals.

ANALYSIS

**Double Jeopardy**

■ In Point I, Baldwin contends the circuit court violated his right against dou-

ble jeopardy by entering judgment on a second-degree assault conviction for cutting the victim's abdomen and a separate conviction for cutting the victim's breast. Baldwin argues that the convictions constitute multiple punishments for the same offense because the box cutter attack on J.C. was a brief, single, uninterrupted assault. The State concedes the circuit court plainly erred in entering the separate second-degree assault convictions.

The Fifth Amendment of the United States Constitution protects against double jeopardy by providing that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." This provision, applicable to the states through the Fourteenth Amendment, prohibits the sentencing of criminal defendants to multiple punishments for the same offense. *State v. Dravenstott*, 138 S.W.3d 186, 190 (Mo.App.2004).

In assault cases, "separate offenses can arise from a single set of facts each time the defendant forms an intent to attack the victim." *State v. Harris*, 243 S.W.3d 508, 511 (Mo.App.2008) (internal quotations and citations omitted). Thus, when the defendant has time to reconsider his actions, "each assault separated by time" constitutes a separate offense. *Id.* Factors such as "time, place of commission, and ... the defendant's intent, as evidenced by his conduct and utterances" determine whether separate offenses should result from a single incident. *State v. Childs*, 684 S.W.2d 508, 511 (Mo.App.1984)(internal quotation marks omitted).

The testimony at trial established that Baldwin cut J.C.'s breast and abdomen in a single stroke with no lapse of time between the injuries. J.C. testified that the two separate wounds "happened in one cut" when Baldwin tried to cut off her shirt. This singular motion and proximity in time suggests that Baldwin did not form a separate intent for each of the two injuries. Because there is no indication that Baldwin reconsidered his actions while using the box cutter to remove J.C.'s shirt, the attack must be recognized as one assault offense.

Our court addressed a similar situation in *Harris*, 243 S.W.3d at 512, where two of the defendant's three first-degree assault convictions were reversed on double jeopardy grounds. The three assault counts arose from individual stab wounds to the victim's face, arm, and back. *Id.* at 510. The attack lasted approximately one minute, and the court found it unlikely that the defendant formed a separate intent to harm the victim before inflicting each stab wound in that brief period. *Id.* at 510, 512.

Even more so than in *Harris*, the abdomen and breast wounds inflicted by Baldwin were part of a single assault and cannot support convictions for separate offenses. The convictions on Count I and Count II for second-degree assault violated Baldwin's constitutional right against multiple punishments for the same offense. The circuit court plainly erred in entering judgment, and manifest injustice will result if both convictions are allowed to stand. Accordingly, we reverse the conviction on Count II (the second-degree assault for cutting J.C.'s breast) and vacate the corresponding five-year sentence.

## Sufficiency of the Evidence

In Point II, Baldwin argues the circuit court erred in overruling his motion for judgment of acquittal on the second-degree assault charges. He asserts the State's evidence was insufficient to prove that he knowingly caused physical injury to J.C. Baldwin claims the State's evidence established, at most, that he recklessly injured J.C., which constitutes a third-degree assault charge. In light of our rever-

sal on the assault charge in Count II, we need only address the sufficiency of the evidence on Count I.

In reviewing claims challenging the sufficiency of the evidence, we are limited to determining whether "there is sufficient evidence from which a reasonable juror might have found a defendant guilty beyond a reasonable doubt." *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998)(internal quotation marks omitted). We review the evidence, and all inferences drawn from it, in the light most favorable to the verdict. *Id.*

To convict a defendant of second-degree assault, the State must prove that the accused knowingly caused physical injury to another by use of a dangerous instrument. § 565.060.1(2).[1] Each element of the offense must be proven beyond a reasonable doubt. *State v. Brushwood*, 171 S.W.3d 143, 146 (Mo.App.2005).

▇ Baldwin contends the State failed to prove he acted "knowingly." A defendant acts knowingly when "he is aware that his conduct is practically certain to cause that result." § 562.016.3(2). Because direct evidence of a mental state rarely exists, circumstantial evidence is sufficient to establish proof of intent. *State v. Hostetter*, 126 S.W.3d 831, 836 (Mo.App.2004). Such intent can be determined from the defendant's conduct before, during, and after the act. *Id.*

Baldwin relies heavily on J.C.'s testimony that, in her opinion, Baldwin did not intend to harm her when he cut off her shirt. The jury, however, could have determined Baldwin's intent from the manner in which the knife wounds were inflicted and the nature of the attack.

The assault began when J.C. refused to perform sexual acts without first seeing evidence of Baldwin's ability to pay the agreed upon fee. Baldwin became angry and aggressively jumped on top of J.C. He pulled out a box cutter and forcefully cut open her shirt. He took no precautions to prevent cutting J.C.'s skin. Slicing downwardly, he cut J.C. twice, first on the breast and then on the abdomen. The wounds were deep enough to cause bleeding and eventual scarring. He did not stop the assault after making the cuts. J.C. testified that Baldwin bit her breast so hard that it felt like he was going to bite through it. The intensity of the bite indicates Baldwin intended to injure J.C., and the jury could reasonably conclude that he had similar intent moments before when using the box cutter. After cutting and biting J.C., Baldwin told her, "I just want to show you how serious I am" and "Next I'll slice your throat." These threats indicate Baldwin intentionally cut J.C.'s breast and abdomen, as he used those injuries to convince the victim that he would also cut her throat if she did not comply with his demands.

Based on the totality of the evidence, the jury could have reasonably concluded that Baldwin knowingly caused physical injury to J.C. by cutting her abdomen with the box cutter. The evidence is sufficient to support the conviction on Count I for second-degree assault. Point II is denied.

**Suppression of DNA Evidence**

▇ In Point III, Baldwin contends the circuit court erred in overruling his motion to suppress DNA evidence because the police violated his constitutional rights against self-incrimination. Baldwin asserts the police requested his consent to DNA testing after he asserted his right to

---

1. All statutory citations are to the Revised Missouri Statutes 2000, unless otherwise noted.

counsel. He argues the police intended to elicit an incriminating response to the request and, thus, the DNA test results should have been suppressed as "fruit of the poisonous tree."

■ "When a pretrial motion to suppress evidence is denied, the defendant must renew the objection or make a specific objection at trial when the evidence is presented to preserve the issue for appellate review." *State v. Jordan*, 978 S.W.2d 36, 40 (Mo.App.1998). Baldwin concedes that he failed to preserve this issue on appeal by not objecting to the admission of the DNA evidence at trial. Hence, he seeks our discretionary review, under Rule 30.20, for plain errors affecting substantial rights that will result in manifest injustice.

■ Baldwin argues the police violated his constitutional rights by requesting a DNA sample after he had been taken into custody and asked for counsel. When the accused requests an attorney, all interrogation must stop until counsel has been provided. *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *State v. Williams*, 159 S.W.3d 480, 486 (Mo.App.2005). Interrogation, under *Miranda*, is defined as "either express questioning" or "any words or actions . . . likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)(footnote omitted). Missouri courts, however, have found that requesting consent to search does not constitute interrogation because a statement of consent is not an incriminating response. *State v. Williams*, 159 S.W.3d at 486, *State v. White*, 770 S.W.2d 357, 359 (Mo.App.1989); *State v. Metz*, 43 S.W.3d 374, 382–83 (Mo.App.2001).

In *White*, a defendant sought to suppress evidence obtained from his apartment. 770 S.W.2d at 358. The defendant claimed the police violated his *Miranda*

rights by obtaining his consent to search after he requested an attorney. *Id.* The court found that "a *Miranda* violation in and of itself would not vitiate the consent to search if otherwise voluntarily given." *Id.* at 360.

Likewise, Baldwin gave his voluntary consent to the DNA sample after requesting an attorney. He did not admit his guilt by agreeing to give the sample. The police did not expressly question Baldwin about his involvement in the assault on J.C., and the request for the DNA sample itself was not intended to elicit an incriminating response. Baldwin's consent was non-testimonial and is not the type of statement covered by the constitutional protections against self-incrimination. Consequently, we find no grounds for plain error or manifest injustice in the denial of the suppression motion. Point III is denied.

### CONCLUSION

The judgment of conviction is reversed and vacated with regard to Count II. In all other respects, the judgment is affirmed.

All Concur.