STATE of Missouri, Respondent,

v.

Timothy H. GARNETT, Appellant.

No. ED 92790.

Missouri Court of Appeals,
Eastern District,
Division Six.

Dec. 8, 2009.

Susan Kister, Clayton, MO, for Appellant.

Chris Koster, Attorney General, Richard A. Starnes, Asst. Attorney General, Jefferson City, MO, for Respondent.

ROBERT G. DOWD, JR., Presiding Judge.

Timothy H. Garnett (Defendant) appeals from the judgment upon his convictions of one count of domestic assault in the first degree, Section 565.072, RSMo 2000,[1] two counts of domestic assault in the second degree, Section 565.073, and three counts of armed criminal action, Section 571.015, for which Defendant was sentenced to a total of forty years' imprisonment. On appeal, Defendant asserts the trial court erred (1) in overruling his motions for

---

1. All further statutory references are to RSMo 2000 unless otherwise indicated.

acquittal and motion for a new trial because there was only one act of assault and charging him with separate acts was in violation of his rights to be free from double jeopardy and (2) in denying his motion for mistrial after a State's witness attended to a sick juror because it caused undue sympathy or bolstered the witness's testimony. We affirm in part, reverse in part, and vacate in part.

Viewed in the light most favorable to the verdict, the following facts were adduced at trial. Defendant and the victim had an on-again, off-again relationship for approximately twenty years. Defendant and the victim first began their relationship in 1984 and had two children together. Both Defendant and the victim had problems with drug addictions. In January of 2006, the victim decided she did not want to be in a relationship with Defendant anymore and she moved out of the house she shared with Defendant.

Around May 20, 2007, Defendant called the church he and the victim attended. Defendant talked to the executive assistant to the pastor for about an hour regarding the victim and marriage counseling. During the telephone conversation, Defendant described how "he thought about . . . coming to the church on Mother's Day, asking for a ride back with [the victim]" so he could "cut her throat from ear to ear and gouge her eyes out."

On May 27, 2007, the victim picked up Defendant and they went to church. As the victim was leaving, Defendant asked the victim if she would wait for him. Defendant was involved with a welcoming committee ministry that required him to stay a little late. The victim told Defendant she could not wait because she had to sing in the choir at another church and she was giving a ride to another female parishioner. Defendant became angry and told the victim she was not going to leave without him. Defendant got in the front seat of the car next to the victim, and the other woman got in the back. The victim began to drive away. Defendant looked back at the woman in the back and said, "You're about to see something you've never seen before." Defendant then grabbed the victim by her head and cut her throat. After Defendant had cut the victim's throat, the victim tried to stop Defendant and he cut her on the leg, hand, stomach, and breast.

The victim stopped the car, and Defendant got out of the car with the knife in his hand. A passerby stopped and saw Defendant holding the knife by his side. Defendant was angry and "cursing." Defendant repeatedly said, "I'm tired of her shitting on me." Defendant then dropped the knife and sat down on the curb with his head in his hands.

A firefighter who lived in the area provided first aid to the victim until an ambulance arrived. The victim was transported to the hospital with a nine-inch "gaping" neck wound that ran from ear to ear, an injury considered life-threatening because of its proximity to the carotid artery. The victim underwent surgery to repair the severed external jugular vein and tendons in her neck. The victim also had "superficial lacerations" to her hand, breast, stomach, back, and leg. The victim has lasting scars as a result of all the knife wounds inflicted by Defendant.

Defendant testified on his own behalf at trial. Defendant testified regarding the troubled relationship he had with the victim, including, according to Defendant, the victim's recent relapse into drug use and its effect upon their children. Defendant claimed he "just snapped" on the day of the assault.

The jury found Defendant guilty of one count of domestic assault in the first degree, two counts of domestic assault in the

second degree, and three counts of armed criminal action. Following the recommendation of the jury, the trial court sentenced Defendant to thirty years' imprisonment for the first-degree domestic assault count (Count I), and ten years' imprisonment for the accompanying armed criminal action (Count II) to be served consecutively. Defendant was also sentenced to one year imprisonment for each of the second-degree domestic assault counts (Counts III and V), and three years' imprisonment for the two accompanying armed criminal action counts (Counts IV and VI), with the sentences for Counts III–VI to run concurrent with the sentences imposed in Counts I and II, for a total of forty years' imprisonment. Defendant now appeals.

In his first point, Defendant contends the trial court erred in overruling his motions for acquittal and motion for a new trial based on objections to the State filing Counts III–VI as separate counts from Counts I and II because those merged into Counts I and II. Defendant maintains all the injuries inflicted on the victim were part of a single assault and to charge Defendant with separate acts of assault subjected him to multiple convictions and punishments in violation of his rights to be free from double jeopardy.

■ The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that no person "shall be subject for the same offense to be twice put in double jeopardy of life or limb." *State v. Cunningham,* 193 S.W.3d 774, 780 (Mo.App. S.D.2006). Our review for a double jeopardy violation is *de novo. Id.*

■ The Double Jeopardy Clause guarantees that one will not be subjected to multiple punishments for the same offense, and it prevents the state from splitting a single crime into separate parts and

pursuing several prosecutions. *State v. Barber,* 37 S.W.3d 400, 403 (Mo.App. E.D. 2001). In determining double jeopardy, Missouri follows the separate or several offense rule rather than the same transaction rule. *Id.* Under this rule, a defendant may be convicted of more than one offense based on the same conduct if the legislature intended to punish the conduct under more than one statute. *State v. McTush,* 827 S.W.2d 184, 186 (Mo. banc 1992). In determining whether the Missouri legislature intended cumulative punishments, we first look to the statutes under which Defendant was charged and convicted. *State v. Villa–Perez,* 835 S.W.2d 897, 903 (Mo. banc 1992). If the statutes are silent, as is the case here, then we look to the general cumulative punishment statute, Section 556.041. *Id.*

■ Section 556.041 sets forth the limitations on convictions for multiple offenses. That section provides, in pertinent part:

When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if

(1) One offense is included in the other, as defined in section 556.046.

Section 556.041. Section 556.046.1 provides that an offense is an included offense when:

(1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(2) It is specifically denominated by statute as a lesser degree of the offense charged; or

(3) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein.

Here, Defendant was convicted of two counts of domestic assault in the second degree under Section 565.073, which is specifically denominated by statute as a lesser degree of domestic assault in the first degree, Section 565.072. Because second-degree domestic assault is specifically denominated by statute as a lesser degree of first-degree domestic assault, it is also an included offense. Section 556.046.1(2).[2] However, this does not end our inquiry because we must yet determine whether the State could have charged Defendant with separate counts of domestic assault as to each cut suffered by the victim. To analyze this, we use the "unit of prosecution" approach.

██ Treating this case as a "unit of prosecution" case, we must determine whether Defendant was properly charged with a separate assault count for the cut to the victim's throat, the cut to the victim's breast, and the cut to the victim's leg. In assault cases, separate offenses can arise from a single set of facts each time the defendant forms an intent to attack the victim. *State v. Harris*, 243 S.W.3d 508, 511 (Mo.App. W.D.2008). Thus, when a defendant has time to reconsider his actions, "each assault separated by time" constitutes a separate offense. *Id.* Factors such as time, place of commission, and the defendant's intent, as evidenced by his conduct and utterances determine whether separate offenses should result from a single incident. *State v. Childs*, 684 S.W.2d 508, 511 (Mo.App. E.D.1984).

Defendant contends the second-degree domestic assault counts could not be considered separate from the first-degree domestic assault count because the acts were not separated by sufficient time and Defendant did not have the opportunity to reconsider his actions and form intent citing *Harris* and *State v. Baldwin*, 290 S.W.3d 139 (Mo.App. W.D.2009).

In *Harris*, the defendant was charged with and found guilty of three counts of first-degree assault for stabbing the victim in the face, arm, and back. *Harris*, 243 S.W.3d at 510. On appeal, the defendant contended his convictions and sentences punished him multiple times for the same offense, thereby improperly exposing him to double jeopardy. *Id.* The court agreed, noting the entire altercation lasted little more than one minute and the defendant and victim were "locked in a single continuous battle the entire time." *Id.* at 511. The court found the attack must be considered one assault where there was no evidence of separation of time sufficient to provide the defendant with an opportunity to reconsider his actions. *Id.*

In *Baldwin*, the defendant claimed a violation of double jeopardy based on the two counts of second-degree assault—one for a cut to the victim's abdomen and one for a cut to the victim's breast. *Baldwin*, 290 S.W.3d at 142. The court reversed one of the second-degree domestic assault convictions after determining the singular motion of the knife stroke and the proximity in time, with no indication that the

---

**2.** Because domestic assault in the second degree is a lesser-included offense by virtue of Section 556.046.1(2), the elements test in Section 556.046.1(1) and the test set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) advanced by the State do not apply to the present case. At oral argument, the State noted to *State v. Norman*, 178 S.W.3d 556 (Mo.App. W.D.2005) as an example where the elements test set forth in Section 556.046.1(1) was applied in a case involving convictions for first-degree trafficking, Section 195.222, and second-degree trafficking, Section 195.223. The court in *Norman* did not discuss the application of Section 556.046.1(2), which we find applicable under the present circumstances. We have found no similar Missouri case that has addressed the application of Section 556.046.1(2).

defendant reconsidered his actions, suggested the defendant did not form a separate intent for each injury. *Id.*

Here, as in *Harris* and *Baldwin,* the evidence indicated the victim's injuries were inflicted in one quick, continuing attack. The victim testified that after Defendant cut her throat, she "was trying to hold his hand to keep him from cutting [her] any more" when her leg and breast were cut. All the injuries occurred while the victim and Defendant were in the front of the vehicle before Defendant got out of the vehicle with the knife and sat down on the curb. The record does not contain any evidence that would support an inference that Defendant and the victim stopped struggling for any period of time that would have afforded Defendant an opportunity to reconsider his actions. Absent evidence of separation of time sufficient to provide Defendant an opportunity to reconsider his action, Defendant's attack on the victim must be considered one assault and not three as charged by the State.

The trial court erred in overruling his motions for acquittal and motion for a new trial based on objections to the State filing Counts III–VI as separate counts from Counts I and II because to charge Defendant with separate acts of assault subjected him to multiple convictions and punishments in violation of his rights to be free from double jeopardy. Accordingly, we reverse Defendant's convictions for second-degree domestic assault and vacate the corresponding sentences. In addition, we reverse Defendant's convictions for the accompanying armed criminal action on Counts IV and VI and vacate the corresponding sentences. Defendant's first point is granted.

■ In his second point, Defendant claims the trial court erred in denying his motion for a mistrial when the State's witness attended to a juror in medical distress. Defendant asserts that although the juror was replaced by an alternate, the act of the witness assisting the juror "could have caused undue sympathy or bolstered the witness'[s] testimony with the other jurors, and its effects were further exacerbated by the failure of the [trial] court to give a cautionary instruction."

At trial, during the State's case-in-chief, Dr. Gregory Polites (Dr. Polites) testified about the victim's injuries. Dr. Polites testified about the wound to the victim's neck, and when he began to describe how the wound was closed in surgery, one of the jurors experienced nausea. The court took a short recess; however, the jury was not excused. The trial court asked defense counsel if he would "have a problem with [Dr. Polites] asking that juror medical questions." Defense counsel stated that he did not have a problem with that, and after Dr. Polites attended to the juror, a discussion was held at the bench. Dr. Polites informed the trial court that the juror was alright and had experienced a "vasovagal response," a response that occurs when "people hear something that's graphic, people see the sight of blood or have a bad smell or something like that that makes them nauseous."

After a discussion with counsel, the trial court excused the juror and seated an alternate. Defendant then motioned for a mistrial claiming the unusual situation caused prejudice. The trial court denied Defendant's motion for a mistrial, observing that it would be expected for a medical doctor to provide aid in an emergency. The trial court, in fact, noted that by allowing Dr. Polites to attend to the juror, "it kind of made the Defendant look like he was being pretty helpful, too." Defendant did not request any other relief.

■ A mistrial is a drastic remedy to be exercised only in those extraordinary circumstances in which the prejudice to the defendant cannot otherwise be removed. *State v. Ward,* 242 S.W.3d 698,

704 (Mo. banc 2008). Because the trial court observes the incident giving rise to the request for a mistrial, and is in a better position to evaluate the prejudicial effect of the incident, if any, the declaration of a mistrial rests largely in its discretion. *Id.* We review a trial court's refusal to grant a mistrial for an abuse of discretion. *Id.* A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before it and when the ruling is so arbitrary and unreasonable as to shock the appellate court's sense of justice and indicate a lack of careful consideration. *Id.* If reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said the trial court abused its discretion. *State v. Dunn,* 21 S.W.3d 77, 83–84 (Mo. App. S.D.2000).

Defendant maintains Dr. Polites assisting the juror was prejudicial because it "could have cause undue sympathy or bolstered the witness'[s] testimony with the other jurors." Defendant also asserts "its effects were further exacerbated by the failure of the [trial] court to give a cautionary instruction." First, we note Defendant did not object to Dr. Polites attending to the juror when specifically asked by the trial court whether the witness could assist the juror. Second, Defendant did not request a cautionary instruction. *See State v. Bellew,* 612 S.W.2d 401, 403 (Mo.App. S.D.1981) (where no request was made "error cannot be predicated on the trial court's failure to give a cautionary instruction").

Moreover, Defendant has not shown the event of Dr. Polites providing assisting to an ill juror caused undue sympathy. Dr. Polites provided basic aid to a person who was having some distress from hearing graphic details of the injury Defendant inflicted on the victim. Defendant's assertion that Dr. Polites assumed a "heroic role" exaggerates the situation. It would not have appeared unusual for the juror to have that reaction or for a doctor and the trial court to respond the way they did. Additionally, to the extent that Dr. Polites's actions bolstered his credibility, such bolstering could not have prejudiced Defendant. Dr. Polites's testimony went to undisputed issues in the case. Dr. Polites merely provided medical testimony about the victim's injuries. Furthermore, in the light of the overwhelming weight of the evidence, Defendant cannot show he was prejudiced. The trial court did not err in denying Defendant's request for a mistrial. Defendant's second point is denied.

We reverse Defendant's convictions for second-degree domestic assault on Counts III and Counts V and vacate the sentences imposed. Furthermore, we reverse Defendant's convictions for the accompanying armed criminal action on Counts IV and VI and vacate the sentences imposed. In all other respects, the judgment is affirmed.

LAWRENCE E. MOONEY, J. and GLENN A. NORTON, J., concur.