275 S.W.3d 293 (2008)
STATE of Missouri, Respondent,
v.
M.L.S., Appellant.
No. WD 68568.
Missouri Court of Appeals, Western District.
October 21, 2008.
Motion for Rehearing and/or Transfer to Supreme Court Denied November 25, 2008.
Application for Transfer Denied February 24, 2009.
*294 Craig A. Johnston, Columbia, MO, for Appellant.
*295 John M. Roodhouse, Columbia, MO, for Respondent.
Before THOMAS H. NEWTON, C.J., RONALD R. HOLLIGER, and ALOK AHUJA, JJ.
THOMAS H. NEWTON, Chief Judge.
M.L.S.[1] appeals his convictions and sentences for resisting lawful detention, section 575.150,[2] obstructing government operations, section 576.030 and four counts of third-degree domestic assault section 565.074. We reverse in part and affirm in part.

Factual and Procedural Background
On November 22, 2006, the police responded to a domestic disturbance call at M.L.S. and D.S.'s condominium. The neighbor below them told the 911 operator that she and her friends had heard two or three big bangs from her neighbor's upstairs apartment. Additionally, the neighbor stated that the woman was crying and her face had been beaten up. The police requested that M.L.S. open the door so they could ensure that everyone was safe. M.L.S. refused to open the door until he spoke with his attorney. The police officers threatened a forced entry. After speaking to his attorney, M.L.S. opened the door. The police removed him from the apartment.
A protective sweep of the condominium showed no sign of a struggle. Officer Cathy Dodd interviewed D.S. and noticed no apparent injuries to her but her face was kind of "puffy and red." At the conclusion of the interview, Officer Dodd informed D.S. that she was arresting M.L.S. for domestic violence because D.S. stated that she pushed M.L.S. because she felt threatened by him. Officer Shannon Hedrick ordered M.L.S. to place his hands behind his back, but M.L.S. did not comply and verbally protested. He also stiffened his arms and used muscle pressure to avoid placing his arms behind his back.
On the way to the police station, M.L.S. stated that he wanted his seat belt buckled. Officer Hedrick notified other officers to pull over because he wanted witnesses to observe him fasten M.L.S.'s safety belt. Officer Hedrick noticed that M.L.S. had moved his handcuffs from the back to the front. Concerned for his safety, Officer Hedrick placed the handcuffs on M.L.S. behind his back and told M.L.S. not to move his handcuffs to the front. Sometime during the transportation, M.L.S. indicated that he needed to scratch his nose and he moved the handcuffs to his front to do so. Officer Hedrick radioed his sergeant about the incident and the sergeant told him to continue driving to the police station. Other officers were ready to receive M.L.S. and place him in a cell when he arrived at the police station.
M.L.S. was charged with third-degree domestic assault and with resisting a lawful detention. The information was later amended without an objection from M.L.S. *296 The first amended information added the offense of obstructing government operations and charged an additional count of third-degree domestic assault based on the same facts. The information was subsequently amended again to include two additional counts of third-degree domestic assault based on the following facts.
K.S., M.L.S.'s daughter from a previous marriage, stated that she observed M.L.S. be abusive toward D.S., during late December of 2006. According to K.S., M.L.S. moved toward D.S. after becoming upset with D.S. when she refused to "shut up" about a personal matter. M.L.S. then placed his hand on D.S.'s neck and kind of "threw her back" but did not "really choke her," grabbed her hair, and yanked it twice. D.S. challenged him twice to do it again and M.L.S. did so, snapping her head back. Shortly thereafter, D.S. and M.L.S. were arguing in the kitchen and K.S. heard a slapping noise. K.S. approached D.S. and saw a red mark on her collarbone. When she confronted M.L.S., he claimed that D.S. hit him, but he did not hit her. D.S. told her, "He's lying. He hit me again. Look, the mark is right here."
M.L.S. filed suggestions in opposition to the joinder of these two additional charges. The trial court allowed the State to file the second amended information. Subsequently, the State filed a third amended information. The jury found M.L.S. guilty as charged. M.L.S. timely filed a motion for new trial, which was denied. He was sentenced to a total of three years in jail and was fined $2,750. M.L.S. appeals, raising six claims.

Legal Analysis
In his first point, M.L.S. contends that the trial court plainly erred in entering judgment of conviction and sentence against him on both counts of third-degree domestic assault for the events that occurred on November 22, 2006, because it amounted to double jeopardy. Whether a defendant is afforded the protections of the Double Jeopardy Clause is a question of law, which we review de novo. State v. Mullenix, 73 S.W.3d 32, 34 (Mo.App. W.D. 2002). Since M.L.S. did not raise a double jeopardy defense at the trial court, this claim can be reviewed only for plain error-as he concedes. See State v. Beggs, 186 S.W.3d 306, 311 (Mo.App. W.D.2005). When deciding whether to exercise our discretion under plain-error review, we look to the face of the defendant's claim to determine whether substantial grounds exist for believing that the trial court committed a plain error, which resulted in manifest injustice or a miscarriage of justice. Id. Thus, we engage in a two-step analysis: we must determine (1) whether the trial court committed an evident, obvious, and clear error that would affect the defendant's substantial rights, and (2) whether manifest injustice or a miscarriage of justice resulted from the plain error. Id. at 311-12.
The Double Jeopardy Clause "`prevents a criminal defendant from being subjected to multiple punishments for the same offense.'" State v. Harris, 243 S.W.3d 508, 511 (Mo.App. W.D.2008) (quoting State v. Dravenstott, 138 S.W.3d 186, 190 (Mo.App. W.D.2004)). Section 556.041 states:
When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if
....
(4) The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods *297 of such conduct constitute separate offenses.
M.L.S. argues that his domestic assault convictions for the events in November 2006 violate the Double Jeopardy Clause because the factual basis for the separate charges were a single continuous and uninterrupted assault, which lasted for seconds. Additionally, he argues that the record contains no evidence of a separation in time sufficient to provide him an opportunity to formulate a new intent.
We agree that the encounter constituted a single course of conduct. However, separating the act into two charges was not a double jeopardy violation because the legislature provided that the "specific periods" of the conduct constituted separate offenses of third-degree domestic assault. Section 565.074.1 reads:
A person commits the crime of domestic assault in the third degree if the act involves a family or household member or an adult who is or has been in a continuing social relationship of a romantic or intimate nature with the actor as defined in section 455.101, and:
....
(3) The person purposely places such family or household member in apprehension of immediate physical injury by any means; or
....
(5) The person knowingly causes physical contact with such family or household member knowing the other person will regard the contact as offensive[.]
Subsections (3) and (5) require different elements to establish the defendant committed third-degree assault, constituting separate offenses under the Blockburger[3] test. Based on the statutory language, it can be inferred that the legislature intended for the apprehension of physical harm and the resulting physical contact to be charged separately. In other words, subsection (3) and (5) are designed to punish different periods of a defendant's action as different offenses. Furthermore, section 565.074.2 states that "[e]xcept as provided in subsection 3 of this section, domestic assault in the third degree is a class A misdemeanor." This indicates that the legislature intended that subsection (3) is separate and distinct from the other provisions. Moreover, the Missouri Supreme Court mandates: "If more than one option [of 565.074.1(1)-(5)] is supported by the evidence and is within the scope of the charge, each option so supported and charged may be submitted by separate instructions." MAI-CR 3D 319.76, Notes on Use 5.
M.L.S. argues that his case is similar to Harris, so we should find a double jeopardy violation. We disagree and distinguish Harris from the present case. Mr. Harris was charged with three counts under the same statute, section 565.050(1), for his continuous action of stabbing the victim. 243 S.W.3d at 511. The appellate court reversed two of the convictions, reasoning three separate assault convictions violated the Double Jeopardy Clause because the underlying facts constituted a single event warranting only one conviction. Id. at 512. The court specifically noted that absent evidence of separation in time sufficient to provide Mr. Harris an opportunity to reconsider his actions, his attack must be considered as one assault. Id. at 511.
*298 Here, M.L.S. was charged for his two distinct acts, albeit under the same statute: verbal threatening while approaching D.S. and pushing her while knowing such contact would be offensive to her. In between the threatening approach and push, the victim D.S. pushed M.L.S. away from her. The fact that these incidents took place almost at the same time in the same place is not dispositive because the two distinct acts required two distinct mens rea. "`[W]hen the charges are based on different acts or a separate mens rea is newly formed, the conduct gives rise to an additional crime.'" Harris, 243 S.W.3d at 511 (quoting State v. Tyler, 196 S.W.3d 638, 641 (Mo.App. W.D.2006)). M.L.S. was punished for his two distinct offenses under different statutory provisions, which was not barred by double jeopardy. M.L.S.'s first point is denied.

Sufficiency of Evidence
In his second, fourth, and sixth points, M.L.S. argues that the trial court erred in overruling his motion for judgment of acquittal because the evidence was insufficient to convict him of (1) third-degree domestic assault for placing his wife in apprehension of immediate physical injury, (2) obstructing government operations for moving his cuffed hands to the front of his person, and (3) resisting arrest for stiffening his arms. The standard of review for claims challenging the sufficiency of evidence is well established. State v. Clay, 975 S.W.2d 121, 139 (Mo. banc 1998). We will accept as true all the evidence and inferences drawn therefrom favorable to the State and disregard all evidence and inferences to the contrary. Id. (internal quotation mark and citations omitted). Appellate review is limited to a determination of whether a reasonable juror might have found sufficient evidence to establish that the defendant is guilty as charged beyond a reasonable doubt. Id.
M.L.S. claims in his second point that the evidence was insufficient for reasonable jurors to convict him for third-degree domestic assault under section 565.074.1(3) for the November events because the State failed to show that he intended to place D.S. in apprehension of immediate physical injury and that D.S. was actually placed in apprehension of immediate physical injury. Section 565.074.1(3) provides a person commits third-degree domestic assault if he purposely places a family member in apprehension of immediate physical injury by any means. The family element is clearly met and not in dispute; thus, the issue is whether there was sufficient evidence from which the jury could determine that M.L.S. intended to place D.S. in apprehension of immediate physical injury and that D.S. was actually placed in apprehension of immediate physical injury.
At trial, it was stated that M.L.S. and D.S. had been watching a movie and playing cards on the night of the incident; M.L.S. had been drinking. D.S. said something upsetting to M.L.S., who then got up, came toward her, and said, "Don't piss me off." D.S. felt threatened and pushed him. M.L.S. then pushed her back, causing her to fall over the couch onto the floor. Meanwhile, three young women living downstairs heard "loud booms" from M.L.S.'s apartment. They were concerned, so one of them went upstairs to investigate. The young woman testified that after she knocked on D.S.'s door, she heard sniffling. When the door was opened, D.S.'s face was red and she seemed scared. D.S. told her that she was "fine," asked her not to "say anything," and then closed the door. But according to D.S., she told the young woman, "Everything's fine. Not a big deal." D.S. testified that she was not crying nor was she upset at that time. She denied asking the young woman not to say anything. *299 Officer Dodd testified that on the night of the incident D.S. told her that when M.L.S. approached her saying "Don't piss me off," she felt threatened by him and had to push him away.
A reasonable juror could infer that when an intoxicated husband angrily approaches his wife and warns her not to piss him off, he intended to place her in apprehension of immediate physical injury as a means to coerce her into submission. A reasonable juror could also infer that M.L.S. placed D.S. in apprehension of physical injury because D.S. pushed him away in reaction to feeling threatened. Additionally, the statures between the two contribute to sufficiency of the evidence as to a finding of apprehension. D.S. testified that she is smaller in stature than M.L.S. Given the stark contrast between their statures, M.L.S.'s intoxicated condition, M.L.S.'s angry manner, his threatening words, and D.S.'s reaction, we find ample evidence from which a reasonable juror could determine D.S. was placed in apprehension of immediate physical injury. Based on the foregoing, we find the evidence was sufficient to support the conviction of domestic assault in the third degree under section 565.074.1(3). M.L.S.'s second point is denied.
M.L.S. claims in his fourth point that the evidence was insufficient to support his conviction for obstruction of governmental operations under section 576.030.1 because the fact that he moved his handcuffs from his back to his front twice while being transported to the police station does not show interference with a governmental function. The State claims that the evidence was sufficient for two reasons: (1) M.L.S. purposely impaired, hindered, and obstructed officers from completing the transportation by means of moving his handcuffs from the back of his body to the front twice; and (2) additional officers were interrupted from performing various tasks in order to assist with his detention because of his behavior during transportation.
To prove M.L.S. obstructed a governmental operation, the State was required to prove the following three elements: (1) the defendant purposely impaired, or hindered, or perverted the performance of a governmental function; (2) the defendant did so by using or threatening to use violence or force; and (3) the defendant did so for the purpose of obstructing the performance of such government function. § 576.030.1; MAI-CR 3D 330.14. The word "obstructs" encompasses anyone who obstructs, impairs, or perverts the administration of law or other governmental function by specific means, whether or not violence is involved. State v. Holloway, 992 S.W.2d 886, 889-90 (Mo.App. S.D. 1999). An affirmative act of physical interference is required. Id. at 890.
The transportation of a suspect to the police station would be administration of law. However, the evidence viewed in the light most favorable to the State does not show the transportation being obstructed, impaired, or perverted by M.L.S.'s conduct. Officer Hedrick testified that he stopped the transport because M.L.S. asked to be buckled in, not because M.L.S. moved his handcuffs from the back to the front. He noticed M.L.S. had removed his handcuffs to his front only after Officer Hedrick stopped and exited the car. Officer Hedrick replaced the handcuffs immediately thereafter, and no evidence shows that M.L.S. was uncooperative or refused to be handcuffed behind his back at that time. The second time M.L.S. moved his handcuffs from back to front, Officer Hedrick reported it but was told to continue the transportation. No actual delay was caused by the incident. We have reviewed the record and it is unclear from the evidence *300 if any of the officers at the station were interrupted from their regular duties in order to assist with detention once M.L.S. arrived at the station. Therefore, no reasonable juror could have found M.L.S. guilty for obstruction of governmental operation. M.L.S.'s fourth point is granted.
M.L.S. claims in his sixth point that the trial court erred in overruling his motion for judgment of acquittal for resistance of a lawful detention because there was insufficient evidence to prove beyond a reasonable doubt that M.L.S. used physical force to resist his detention by Officer Hedrick. Resisting arrest occurs if the person being arrested resists by using violence, threatening to use violence, using physical force, threatening to use physical force, or by fleeing. State v. Belton, 108 S.W.3d 171, 175 (Mo.App. W.D.2003). The legislature obviously intended for "physical force" to include nonviolent force since they separately listed "violence" and "physical force." Id. M.L.S. does not dispute the fact that he was aware that Officer Hedrick was arresting him at the time, but argues that he did not use "physical force" against Hedrick for the purpose of preventing his arrest. We disagree.
In State v. Feagan, the court held that it was sufficient for the jury to find the defendant resisted arrest by threatening violence and using physical force in stiffening his arms and requiring the officers to coerce him by force. 835 S.W.2d 448, 450 (Mo.App.S.D.1992). Further, in Belton, this court held that although the defendant did not threaten to use force against the arresting officer, the State presented enough evidence to prove the defendant exerted physical force by ignoring the orders and stiffening his body while the arresting officer tried to pull him out of the car. Belton, 108 S.W.3d at 175. Likewise, M.L.S. stiffened his arms using muscle pressure to resist being handcuffed behind his back. His noncompliance forced the officer to struggle with him in an attempt to get his arms behind his back. He thus used "physical force." This was sufficient evidence from which the jury could have reasonably concluded that M.L.S. resisted arrest. M.L.S.'s six point is denied.

Self-representation
In his third point, M.L.S. contends that the trial court erred and abused its discretion in not allowing M.L.S. to serve as his own co-counsel because M.L.S. was a licensed attorney in good standing with the Missouri Bar and it was not shown that his role as co-counsel would have disrupted, obstructed, or delayed the proceedings. M.L.S. retained two attorneys to represent him. Two days before trial, at the pre-trial hearing, M.L.S. requested permission to enter his appearance as co-counsel. After a lengthy discussion, the trial court denied M.L.S.'s request to enter as co-counsel, noting that he already had two attorneys to conduct his defense. On the day before trial, M.L.S. filed a written entry of appearance as co-counsel, and the trial court again denied this request.
A criminal defendant has a constitutional right under the Sixth and Fourteenth Amendments to represent himself and waive counsel, or to have counsel of his choice represent him; but he has no right to hybrid representation-a combination of self-representation and assistance of counsel. State v. Williams, 34 S.W.3d 440, 442 (Mo.App. S.D.2001). It is within the discretion of the trial court to decide whether a defendant who is represented by counsel may participate in his own trial. State v. Hurt, 931 S.W.2d 213, 214 (Mo. App. W.D.1996). However, Missouri law has not confronted the issue of whether a defendant who is also a licensed attorney is entitled to represent himself. M.L.S. *301 invites this court to make a special exception to the rule that a criminal defendant does not have a right to hybrid representation when the defendant is also a licensed attorney, citing to precedent from a foreign jurisdiction.
Georgia law apparently has the same rule as stated above but has carved out an exception where the criminal defendant is also a licensed attorney, with the restriction that the lawyer is subject to the authority of the trial court to ensure orderly disposition of matters. Seagraves v. State, 259 Ga. 36, 376 S.E.2d 670 (1989). In Seagraves, the Georgia Supreme Court reasoned that when the defendant who sought to act as his own co-counsel was a lawyer himself,
the risk is significantly less than in instances where a person who is not a lawyer seeks to be his own co-counsel. A lawyer acting as his own co-counsel presumably is familiar with courtroom procedure, is experienced in working with other lawyers as co-counsel in representing clients, and is professionally committed to the goal of avoiding disruption of judicial proceedings. Moreover, he is subject to disciplinary rules and procedures if he does disrupt the proceedings.
Id. at 672. Further, the court in Miller v. State, held that while the trial court may have the "authority to prevent disruption of the proceedings" it could not use that authority "to prevent a non-disruptive attorney/defendant from participating actively and professionally in his defense." 219 Ga.App. 213, 464 S.E.2d 621, 623 (1995). In that case, the court found that it was error to deny the defendant, an experienced criminal attorney, from acting as co-counsel because, if he was allowed to do so, he would strategize the case differently, and it was highly likely a different judgment may have resulted.
The State asks that we reject this invitation and follow the Sixth Circuit decision, United States v. Mosely, 810 F.2d 93 (6th Cir.1987). In that case, the defendant, Mr. Mosely, was a judge and a member of the state and federal bar. The Sixth Circuit ruled that the district court properly exercised its discretion in denying the defendant's motion for hybrid representation, reasoning specifically that:
[t]here are obvious justifications for the refusal to allow hybrid representation in criminal trials, regardless of the legal experience of the defendant. The potential for undue delay and jury confusion is always present when more than one attorney tries a case. Further, where one of the co-counsel is the accused, conflicts and disagreements as to trial strategy are almost inevitable.
Id. at 98.
After reviewing the reasoning provided in foreign case law, we decline to create an exception to our rule that a criminal defendant does not have a right to hybrid representation. We believe trial courts should have discretion as to whether a criminal defendant who is also an attorney should serve as co-counsel. In this case, the trial court did not abuse its discretion because of the personal nature of the case, M.L.S.'s familiarity with the witnesses, and the lack of an allegation that M.L.S.'s defense was impaired by his inability to examine or cross-examine witnesses. M.L.S.'s third point is denied.

Amending the information
In his fifth point, M.L.S. contends that the trial court erred in overruling his objection to the State filing a second-amended information because the ruling *302 violated his rights under Rule 23.08[4] and section 545.010. M.L.S. argues that section 545.010 was violated because the prosecution amended the information to include charges that were already pending in a separate case and that Rule 23.08 was violated because the amendment to the information charged additional offenses. Additionally, M.L.S. argues that these violations deprived the trial court of jurisdiction to try him on the additional offenses.
First, a violation of Rule 23.08 does not deprive the trial court of jurisdiction. Rule 23.08 states that an information may be amended at any time before the verdict if it does not charge additional or different offenses and does not violate a defendant's substantial rights. The Missouri Supreme Court held that a violation of Rule 23.08 is not jurisdictional. State v. Simpson, 846 S.W.2d 724, 727 (Mo. banc 1993). Section 545.010 states in relevant part:
the court in which the prosecution shall be first commenced by the filing therein of the indictment or information, and the issuing of a warrant thereon, shall retain jurisdiction and control of the cause to the exclusion of any other court so long as the same shall be pending and indisposed of[.]
Missouri courts have determined a violation of this provision to be jurisdictional. However, there is no violation here because the two courts in this case were in the same county. According to Rule 23.10, if two or more informations are pending against the defendant for the same offense in the same county, the information last filed shall supersede all informations previously filed. Thus, the first information was no longer valid when the State amended the information to charge M.L.S. with the same offenses in a previous information. So there was no violation of section 545.010.
Second, M.L.S. did not object to the amending of the information at the trial court on the grounds he argues to this court. Therefore, this argument was not preserved and will be reviewed for plain error. A violation of Rule 23.08 occurs when the State incorporates additional or different offenses to the information that causes the defendant to be prejudiced. There is no question that the second amended information included additional offenses. Thus, we determine whether M.L.S.'s substantial rights were prejudiced. The test of prejudice for violating Rule 23.08 is whether the defendant's evidence would still be applicable after the amendment, and whether the planned defense for the original offense would still be available. State v. Fitzpatrick, 193 S.W.3d 280, 284 (Mo.App. W.D.2006). M.L.S.'s defense for all four counts of third-degree domestic assault was that the eyewitnesses misperceived the events as abuses that were not abusive acts. It does not appear that his defense was prejudiced by adding the additional charges. See Fitzpatrick, 193 S.W.3d at 286. Moreover, M.L.S. does not allege prejudice in his brief. The trial court did not plainly err in allowing the State to amend the information to include additional offenses. Therefore, M.L.S.'s fifth point is denied.

Conclusion
In conclusion, we reverse the conviction and sentence for obstruction of governmental operation and affirm the judgment in all other respects.
RONALD R. HOLLIGER, Judge, writes a separate concurring opinion.
RONALD R. HOLLIGER, Judge.
I fully concur in the reasoning and the result of the majority opinion in this case. *303 I write separately because the defendant in this criminal case is only identified by initials rather than name. The defendant's name is not provided because of RSMo. section 566.226:
1. After August 28, 2007, any information contained in any court record, whether written or published on the Internet, that could be used to identify or locate any victim of sexual assault, domestic assault, stalking, or forcible rape shall be closed and redacted from such record prior to disclosure to the public. Identifying information shall include the name, home or temporary address, telephone number, Social Security number or physical characteristics.
(emphasis added)
In this domestic assault case the defendant filed a motion to close the file under section 566.266 because to disclose his identity would necessarily provide information "that could be used to identify or locate the victim". That motion was not opposed by the State and was granted administratively long before the submission of the case. At first blush this result seems appalling and after more consideration remains so.
But, unfortunately, the language chosen by the legislature makes such an interpretation necessary. Critics, including legislators, of our failure to identify the defendant will say that was not the intent of the legislature. But courts are not given carte blanche to determine legislative intent. We must look at the language chosen by the legislature. The first sentence prohibiting the disclosure of "any information that could be used to identify or locate the victim" when read with the last sentence seems to clearly state that the specified identifying information in the last sentence (name, social security number etc) is part, but not all of the phrase "any information". This leads to the next question of what additional information is barred from disclosure to the public. We are required to give the words some meaning but are given no guidance except whether it could be used to identify or locate the victim. Certainly in a domestic assault the name of the convicted spouse "could be used". If the purpose of the statute is to protect the identity of the victim then it is questionable why domestic assault cases are included at all. By definition in a domestic assault case the perpetrator knows the identity of the victim.
Moreover it is worrisome anytime that in a criminal case the name of the defendant is concealed from the public. It is particularly so here because the defendant is a well known member of the community and engaged in a profession that does not tolerate such criminal conduct. I strongly urge the legislature to fix this statute.
NOTES
[1] We have identified Appellant solely by his initials pursuant to this Court's Order dated April 23, 2008, granting Appellant's unopposed motion to proceed in this fashion. Appellant's motion cited section 566.226.1, which instructs courts to redact from written court records made available to the public "any information ... that could be used to identify or locate any victim of ... domestic assault[.]" We harbor some doubt as to whether § 566.226.1 should be interpreted as broadly as Appellant contends. Nevertheless, because the State did not oppose Appellant's motion, and has not otherwise argued the point, we adhere to our earlier Order without deciding whether section 566.226.1 in fact requires the redaction of Appellant's name in these circumstances.
[2] Statutory references are to RSMo 2000 and the Cumulative Supplement 2007.
[3] The Blockburger test states: "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." Yates v. State, 158 S.W.3d 798, 802 (Mo.App. E.D.2005)(citing Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)).
[4] Rule references are to Missouri Rules of Criminal Procedure 2007.