

# In the Missouri Court of Appeals
## Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED100905 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis City |
| vs. | ) | |
| | ) | Honorable Steven R. Ohmer |
| KENNETH DUDLEY, | ) | |
| | ) | |
| Appellant. | ) | Filed: April 21, 2015 |

A jury convicted the defendant, Kenneth Dudley, of selling marijuana, possessing drug paraphernalia, and felonious resisting arrest. Defendant asserts two points of trial-court error on appeal, both directed toward his conviction for resisting arrest. He challenges both the sufficiency of the evidence to support the conviction and the verdict-directing instruction submitting the count to the jury. We find the evidence sufficient, but the instruction plainly erroneous. We therefore reverse the trial court's judgment entered on defendant's conviction for resisting arrest and remand the case to the trial court for a new trial on that count.

### *Factual and Procedural Background*

One day, in February of 2012, members of the St. Louis Metropolitan Police Department were conducting undercover drug buy-bust operations in one of the city's parks. Officer DeSheila Howlett was assigned as the undercover buyer. She wore regular street clothes and

drove in an unmarked vehicle. She wore a recording device that allowed the other officers to hear her.

Officer Howlett, driving around the park, called out to defendant, who was walking in the park. She asked defendant if he had "a dub," the street name for $20 worth of drugs. Defendant replied that "he was good" and showed Howlett that he had marijuana.

Officer Howlett invited defendant into her car. After sitting in the front passenger seat, defendant took out a bag of marijuana. Defendant did not have anything to put the drugs on, so Officer Howlett handed him a lid from a soda cup she had in the car. Defendant placed some marijuana on the lid, and Officer Howlett gave him $20. At this point Officer Howlett spoke a code phrase that let her fellow officers know a transaction had taken place and was completed.

Upon hearing the code phrase, Officers Bradford Ellis and Jeremy Cotton exited their cars and immediately approached the passenger side of Howlett's car, where defendant was still sitting in the passenger seat. The officers wore vests that had "Police" written on the front and back in bold white letters. Both officers carried their department-issued handguns. Officer Ellis made eye contact with the defendant and said, "Come on man, get out of the car." Defendant stiffened and did not comply. He remained seated in the car. The officers opened the car door and each grabbed one of defendant's arms and pulled defendant out of the car onto the ground.

In taking defendant to the ground, defendant landed with his arms underneath him. Due to safety concerns, and so they could place the defendant in handcuffs, the officers tried to remove his hands from under him, to no avail. Defendant clenched his hands near his body by his waistline area. Officer Cotton ordered defendant to put his hands where the officers could see them. Defendant did not comply. The officers continued to pull on defendant's arms, ordering defendant to let them see his hands, but defendant stiffened up and refused to remove

2

his hands and arms from underneath his body. A detective who had responded to the scene ultimately used his Taser on the defendant to make him comply. Defendant finally complied, and the officers placed him in handcuffs and placed him under arrest. Officers found a bag of marijuana and a $20 bill on the ground between defendant and Howlett's car. A search revealed a digital scale in defendant's pockets.

The jury found defendant guilty of selling marijuana, possessing drug paraphernalia, and resisting arrest. The trial court sentenced defendant, as a prior offender and a prior and persistent drug offender, to ten years for the sale of marijuana, and sixty days in a medium security institution on the remaining counts.

*Sufficiency of the Evidence*

Defendant alleges the trial court erred in overruling his motion for judgment of acquittal and in entering judgment on the jury's verdict finding him guilty of resisting arrest because the State presented no evidence that he resisted arrest "by using or threatening the use of violence or physical force."

When a defendant challenges the sufficiency of the evidence to support a conviction, this Court's review is limited to determining whether the State introduced sufficient evidence from which a reasonable juror could have found each element of the offense beyond a reasonable doubt. *State v. Bateman*, 318 S.W.3d 681, 686-87 (Mo. banc 2010). In making this determination, this Court does not reweigh the evidence. *Id.* We accept as true all evidence favorable to the verdict, including all favorable inferences drawn from the evidence. *Id.* And we disregard all evidence and inferences contrary to the verdict. *Id.*

A person resists arrest when: (1) he knows or reasonably should know a law-enforcement officer is making an arrest; (2) he resists the arrest by using or threatening to use violence or

3

physical force or by fleeing from the officer; and (3) he does so for the purpose of preventing the officer from completing the arrest. Section 575.150; *State v. Pierce*, 433 S.W.3d 424, 434 (Mo. banc 2014). Defendant only challenges the evidence regarding the second element – that he resisted the arrest by using or threatening violence or physical force. Without citing authority supporting his position, defendant contends that refusing to exit the car, being forcibly removed from the car and then taken to the ground without resistance, and merely stiffening his arms to resist being handcuffed is insufficient to constitute "physical force" under Section 575.150 in the absence of other evidence of intentional physical force.

Caselaw holds otherwise. In *State v. Belton*, 108 S.W.3d 171 (Mo. App. W.D. 2003), the defendant used his muscles to overcome an attempt to pull him from a car. The Court found this evidence sufficient to support a finding that the defendant had resisted arrest by physical force. *Id.* at 175. Defendant Belton was a passenger in a vehicle that was stopped by a highway patrolman for traffic violations. *Id.* at 172. The officer observed Belton throw plastic bags out the car window before the car stopped. *Id.* at 173. After the car came to a stop, the officer approached the car and told Belton he was under arrest for littering. *Id.* The officer ordered Belton out of the car. *Id.* Belton initially complied but then sat back down on the car's front seat. *Id.* The officer again ordered Belton out of the car, but Belton refused. *Id.* The officer tried to pull Belton from the car, but could not. *Id.* Noting that the legislature intended for "physical force" to include nonviolent force, the Court held that the jury could reasonably conclude that Belton used physical force in resisting arrest "by exerting the strength and power of his bodily muscles to overcome [the officer's] attempts to pull him from the car. *Id.* at 175.

In *State v. Feagan*, 835 S.W.2d 448 (Mo. App. S.D. 1992), the defendant stiffened his arms when officers attempted to put him in handcuffs. The Court found the evidence sufficient

4

to support defendant's conviction. *Id.* at 450. There, law-enforcement officers were dispatched to defendant Feagan's home to arrest him for the forcible rape of his ex-wife. *Id.* at 449. The officers found Feagan asleep in his bedroom. *Id.* They awoke him and informed him that he was under arrest. *Id.* Feagan did not submit to the custody of the officers. *Id.* Instead, Feagan stated he was not going to go with the officers, and that it was going to take more than the two officers to take him in. *Id.* at 449-50. When the officer attempted to place Feagan in handcuffs, Feagan stiffened up his arms, requiring the officers to coerce him by force. *Id.* at 450. The Court found this evidence sufficient for the jury to find that defendant resisted arrest by threatening violence and using physical force. *Id.*

The same result was reached in *State v. M.L.S.*, 275 S.W.3d 293 (Mo. App. W.D. 2008). The defendant there stiffened his arms using muscle pressure to resist being handcuffed. *Id.* at 300. The defendant's noncompliance forced the law-enforcement officer to struggle with him in an attempt to get his arms behind his back. *Id.* Again noting that "physical force," as used in the statute, includes nonviolent force, the Court found the evidence sufficient for the jury to find that the defendant used physical force to resist his arrest. *Id.*

Similarly here, defendant stiffened his body and refused to exit the car, forcing two officers to pull him out of the car and onto the ground. Defendant then clenched his hands near his waistline, stiffened his arms, and refused to remove his hands and arms from underneath his body. Officers pulled on defendant's arms in order to secure his hands and place him in handcuffs, all to no avail. Like the defendants in *Belton*, *Feagan*, and *M.L.S.*, defendant exerted the strength and power of his muscles to overcome the officers' attempts. And he refused to comply with the officers' orders to show his hands. Defendant did not relent and release his arms and hands until he was subdued by the officer's use of a Taser. We hold that this

5

constitutes evidence from which a reasonable juror could have found that defendant used physical force to resist his arrest. We deny this point.

## *Verdict-Directing Instruction*

Defendant next alleges the trial court plainly erred in submitting the verdict-directing instruction for resisting arrest. The State concedes error.

Defendant correctly acknowledges that he did not preserve this claim of error for review. Defense counsel did not object at trial or include the claim in a motion for new trial as required by Rule 28.03. *State v. Meeks*, 427 S.W.3d 876, 877 (Mo. App. E.D. 2014)(holding challenge to instruction not preserved where counsel did not object at trial or include allegation of error in motion for new trial). Defendant thus requests plain-error review under Rule 30.20. We have discretion to consider unpreserved claims of error affecting substantial rights if manifest injustice or a miscarriage of justice would otherwise occur. *Id.*; Rule 30.20; *State v. Wurtzberger*, 40 S.W.3d 893, 898 (Mo. banc 2001).

"In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict." *State v. Doolittle*, 896 S.W.2d 27, 29 (Mo. banc 1995). "We are more inclined to reverse in cases where the erroneous instruction did not merely include a wrong word or some other ambiguity, but excused the State from its burden of proof on a contested element of the crime." *Meeks*, 427 S.W.3d at 877-78; *see also State v. Stover*, 388 S.W.3d 138, 153-55 (Mo. banc 2012)(finding plain error and reversing conviction where omission of essential element from jury instructions relieved State of its burden). Here, the instruction included an element of a crime with which defendant had not been charged. The

6

inclusion of that element misdirected the jury on the law and excused the State from its burden of proof on the charged crime.

Instruction 7, the verdict-directing instruction for resisting arrest, directed the jury to find defendant guilty if they believed he resisted arrest by "using violence, physical force, or physical interference."[1] Defendant argues that allowing the jury to find him guilty for "physical interference" with his own arrest deviates from the statute under which he was charged. Defendant is correct.

The State charged defendant with resisting arrest in violation of Section 575.150. That statute provides that a person commits the crime of resisting or interfering with arrest when he "(1) resists the arrest, stop, or detention of such person by using or threatening the use of violence or physical force ... or (2) interferes with the arrest, stop or detention of another person by using or threatening the use of violence, physical force or physical interference." Section 575.150. The plain language of the statute clearly contemplates two distinct crimes: resisting one's own arrest and interfering with another's arrest. *Meeks*, 427 S.W.3d at 878. Resisting arrest by "physical interference" is not an element of the crime of resisting one's own arrest. *Id.* "Physical interference" in the statute refers only to interfering with someone else's arrest. *Id.* The trial court erroneously included this language in the submitted instruction.

---

[1] Instruction 7 reads in full (with emphasis added):
> As to Count III, if you find and believe from the evidence beyond a reasonable doubt:
> First, that on or about February 14, 2012, in the City of St. Louis, State of Missouri, Jeremy Cotton and Bradford Ellis were law enforcement officers, and
> Second, that Jeremy Cotton and Bradford Ellis were making an arrest of the defendant for sale of a controlled substance, and
> Third, that defendant knew or reasonably should have known that one or more law enforcement officers were making an arrest of the defendant, and
> Fourth, that for the purpose of preventing the law enforcement officers from making the arrest, the defendant resisted *by using violence, physical force, or physical interference*,
> Then you will find the defendant guilty under County III of resisting an arrest.
> However, unless you find and believe form the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

7

The erroneous inclusion of "physical interference" resulted in a manifest injustice. "Physical interference" was included and stated in the disjunctive as an alternative means of resisting. The instruction thus gave the jury an option of basing its conviction on "physical interference alone." Moreover, "physical interference" was the sole basis on which the State asked the jury in closing to find defendant guilty. The State argued:

> In order to make the arrest, they had to get his hands. He wouldn't give them his hands. He was clinching underneath his body. Physical interference. He was physically interfering with these officers being able to get his hands to arrest him... he resisted ... by physical interference....
> And so he was tased because he was using this physical interference that prevented them from being able to affect the arrest.

As noted, "physical interference" is not a lawful basis for holding defendant guilty of resisting his own arrest under the statute. Inclusion of the phrase "physical interference" thus misdirected the jury on the law and relieved the State of its burden of proving that defendant resisted his own arrest by one of the means set forth in the statute. *Meeks*, 427 S.W.3d at 881.

The trial court plainly erred in submitting the instruction. That error resulted in manifest injustice. We grant defendant's point. We reverse the judgment entered on defendant's conviction for resisting arrest and remand the case to the trial court for a new trial on that count.

_____
LAWRENCE E. MOONEY, PRESIDING JUDGE

CLIFFORD H. AHRENS, J., and
LISA VAN AMBURG, J., concur.

8